UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH DANIELS, JR.                                        CIVIL ACTION

VERSUS                                                             NO. 13-6408

CAROLYN COLVIN, COMMISSIONER OF THE        SECTION "R"(2)
SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATIONS

Plaintiff, Joseph Daniels, Jr., seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") under Title II and supplemental security income benefits ("SSI") under Title XVI of the Act.  42 U.S.C. §§ 405(g), 423, 1381a. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

I.     PROCEDURAL HISTORY

Daniels filed applications for DIB and SSI on May 12, 2011, alleging disability since August 31, 2009, because of a bullet in his right elbow, one testicle, high blood pressure, high cholesterol, hepatitis C and a fractured right wrist. (Tr. 56, 121, 123, 143). Some of the agency's documentation for plaintiff's applications cites an alleged onset date of October 30, 2009.  (Tr. 123, 143).  The ALJ explored this conflicting date with Daniels and his attorney at the hearing, but they could not identify the source of it.  My

review of the record reveals that the agency apparently denied a prior DIB claim on October 30, 2009.  (Tr. 139, 232).  Presumably that denial date is the source of the October alleged onset date for the current applications.

The Commissioner could have insisted that October 30, 2009, was the appropriate onset date for plaintiff's new applications for benefits if the prior application had alleged the same type of disabling impairments, because an award of benefits for a period of disability for which a previous application has been denied is ordinarily barred by res judicata.  Asbury v. Comm'r of Soc. Sec., 83 F. App'x 682, 686 (6th Cir. 2003) (citing Bogle v. Sullivan, 998 F.2d 342, 346 (6th Cir. 1993)).  However, "[i]f the Commissioner reviews the entire record and renders a decision on the merits, the earlier decision will be deemed to have been reopened, and any claim of administrative res judicata to have been waived and thus, the claim is subject to judicial review."  Byam v. Barnhart, 336 F.3d 172, 180 (2d Cir. 2003) (quotation omitted) (citing Kasey v. Sullivan, 3 F.3d 75, 77-78 (4th Cir. 1993); Brown v. Sullivan, 932 F.2d 1243, 1246-47 (8th Cir. 1991); Coup v. Heckler, 834 F.2d 313, 317 (3d Cir. 1987); Malave v. Sullivan, 777 F. Supp. 247, 251-52 (S.D.N.Y. 1991)) (additional citations omitted); accord Buchholtz v. Barnhart, 98 F. App'x 540, 543-44 (7th Cir. 2004).

The ALJ found that August 31, 2009, is the alleged onset date for plaintiff's applications.  Accordingly, the Commissioner's res judicata defense has been waived and

this court considers plaintiff's application as validly alleging an onset date of August 31, 2009, just as the ALJ did.

After his applications were denied at the agency level, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 30, 2011. (Tr. 25-54). On August 15, 2012, the ALJ issued a decision denying the applications for benefits. (Tr. 10-21). After the Appeals Council denied review on September 12, 2013, the ALJ's decision became the final decision of the Commissioner for purposes of this court's review. (Tr. 1-3).

Instead of filing a memorandum of facts and law as ordered, Record Doc. No. 10, Daniels filed a motion for summary judgment. Record Doc. No. 11. The court treats his summary judgment motion as a memorandum of facts and law regarding his instant appeal from the Commissioner's final decision. Defendant filed a timely reply memorandum of facts and law. Record Doc. No. 13.

II.   STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.   The ALJ did not apply the correct legal standard in determining whether Daniels has severe impairments.

B.   The ALJ failed to apply the proper legal standard to determine plaintiff's credibility.

III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.    Daniels has the following medically determinable impairments: hypertension, arthropathies,[1] hepatitis C and alcohol/drug abuse.

2.    He does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months. Therefore, he does not have a severe impairment or combination of impairments.

3.    Although his medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the finding that he has no severe impairment or combination of impairments.

4.    Daniels has not been under a disability from August 31, 2009, through the date of the decision.

(Tr. 15, 18, 20).

IV.    ANALYSIS

A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.   Richard ex rel. Z.N.F. v. Astrue, 480 F.

---

[1]Arthropathy is "[a]ny disease affecting a joint."   Stedman's Medical Dictionary (27th ed.), available on Westlaw at STEDMANS 33390.

4

App'x 773, 776 (5th Cir. 2012) (citing <u>Perez v. Barnhart</u>, 415 F.3d 457, 461 (5th Cir. 2005)); <u>Stringer v. Astrue</u>, 465 F. App'x 361, 363 (5th Cir. 2012) (citing <u>Waters v. Barnhart</u>, 276 F.3d 716, 716 (5th Cir. 2002)).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Richard ex rel. Z.N.F.</u>, 480 F. App'x at 776; <u>Stringer</u>, 465 F. App'x at 363-64; <u>Perez</u>, 415 F.3d at 461.  This court may not reweigh the evidence in the record, try the issues <u>de novo</u> or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.  <u>Halterman ex rel. Halterman v. Colvin</u>, 544 F. App'x 358, 360 (5th Cir. 2013) (citing <u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000)); <u>Stringer</u>, 465 F. App'x at 364.  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  <u>Luckey v. Astrue</u>, 458 F. App'x 322, 324 (5th Cir. 2011) (citing <u>Selders v. Sullivan</u>, 914 F.2d 614, 617 (5th Cir. 1990)); <u>Newton</u>, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  <u>See Arkansas v. Oklahoma</u>, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  <u>Joubert v. Astrue</u>, 287 F. App'x 380, 382 (5th Cir. 2008) (citing <u>Perez</u>, 415 F.3d at 461).  Any findings of fact by the Commissioner that are

5

supported by substantial evidence are conclusive. Ray v. Barnhart, 163 F. App'x 308,

311 (5th Cir. 2006) (citing Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

To be considered disabled and eligible for SSI or DIB,[2] plaintiff must show that

he is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations

that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§

404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2012). The regulations

include a five-step evaluation process for determining whether an impairment prevents

a person from engaging in any substantial gainful activity.[3] Id. §§ 404.1520, 416.920;

---

[2]The relevant law and regulations governing claims for DIB and SSI are identical. Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994)); Baltierra v. Chater, 70 F.3d 1268, 1995 WL 696740, at *1 (5th Cir. Oct. 19, 1995) (citing Haywood v. Sullivan, 888 F.2d 1463, 1467 (5th Cir. 1989)); Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *1 (5th Cir. Apr. 5, 2001) (citing Haywood, 888 F.2d at 1467).

[3]The five-step analysis requires consideration of the following:
    First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
    Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).
    Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).
    Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from

Alexander v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461.  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Id.

The claimant has the burden of proof under the first four parts of the inquiry.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Alexander, 412 F. App'x 720-21; Perez, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability:  "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'"  Chrisner v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

---

returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).
    Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f), 416.920(f).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. Pt. 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

B.   Factual Background

Daniels testified that he was 56 years old and a high school graduate, and had no vocational training after high school.  He stated that he last worked on August 8, 2009, and did not work part-time after leaving that job.  He testified that he worked as a steward from 1988 until August 2009 and that he was terminated for missing too much work because of multiple doctors' appointments during the preceding months.  He said he received unemployment benefits after he was let go.  (Tr. 28-32, 33-34).

 Plaintiff testified that he worked for ten years as a steward and then was promoted to supervisor.  (Tr. 32-33).  He stated that he left New Orleans for the hurricane, but his employer, the New Orleans Convention Center, called him back and he returned to work.

Daniels said he checked in with the unemployment office as required while he collected benefits.  (Tr. 34-35).  He stated that he did not understand that, whenever he contacted the unemployment office, he was confirming that he was willing, ready and able to work.  He testified that he looked for jobs at hotels and a grocery store, but no one called him back.  (Tr. 35, 39-40).  He said he had last applied for a job about one year before the hearing.  (Tr. 46).

In response to the ALJ's observation that the record contains no records of any medical treatment between August 2009 and 2011, Daniels testified that he went to the clinic near his house for treatment and that he was financially unable to see a doctor. (Tr. 34).  He stated that he missed work in 2009 because he was being treated for high

8

blood pressure, high cholesterol and hepatitis C, and that his blood pressure and cholesterol remained high after he stopped working. He said he has no paperwork from his employer showing the reason for his termination. (Tr. 35-36).

Plaintiff testified that he cannot work because his right arm causes pain so that he cannot lift with it and cannot sleep. He stated that his arm began hurting in 2009 and that he was then taking Tylenol every day, which "was affecting my body." (Tr. 36-37). He said he was diagnosed with hepatitis at Charity Hospital before he stopped working. He testified that the doctor told him that eventually he would have to go on dialysis for his kidneys, but that his hepatitis has not gotten that bad yet. (Tr. 37).

Daniels testified that he stopped receiving unemployment benefits one or two years earlier. The ALJ stated that the records indicated that plaintiff had received unemployment benefits through the first quarter of 2012, but Daniels denied that he still received benefits at that time. (Tr. 37-39).

Plaintiff said he could not work full-time because of problems with his right arm. (Tr. 36, 40). He stated that the bone in his right arm is shattered as a result of a gunshot wound in the 1980s. He said he still has bone fragments "scattered all over my arm" and has a skin graft on that arm. He stated that he was scheduled for an MRI the following week to check for nerve involvement. (Tr. 40-41). Daniels testified that the wound has gotten worse and that the pain affects his daily activities so that he cannot do pushups,

lift or exercise with that arm.  (Tr. 41).  He testified that he can cook, make beds and do "stuff like that around the house."

Daniels stated that his elbow is his main problem, especially if he twists or pulls it up, when he can hear something rubbing against the bone in the back of his arm.  He said he has been taking prescription pain medication for about a year, since he started going to Daughters of Charity Clinic.  (Tr. 42).  He stated that the medication eases the pain, but he still has pain.  (Tr. 42- 43).  He testified that he can lift nearly 20 pounds, but "I'm going to feel it" if he does so.  He is right-handed.

Plaintiff testified that he takes medication for high blood pressure and high cholesterol.  He stated that the medication has not controlled his blood pressure, although he takes it every day, and that his doctor always tells him his pressure is too high.  He said he cannot work because of his arm problems, high blood pressure, high cholesterol and hepatitis C.  (Tr. 43-44).  He stated that he has not yet been treated for hepatitis and does not know what his doctor plans to do regarding that condition.  He thought that his arm would be fixed after he has the MRI and that the doctor would then decide what to do about his hepatitis C.  (Tr. 44).

Daniels stated that, on a typical day, he watches TV or sits on the porch because of pain in his arm.  He said he "used to help a guy . . . with cars and everything," but can no longer lift with his right arm.  (Tr. 45-46).  He said he lives in a house, which is not his house, and he can cook.  He testified that he rarely goes outside, except to walk to the

10

store or visit friends.  (Tr. 46).  He said he had problems with drugs and alcohol when he was younger, but has not had any such problems in the past three years.  (Tr. 46-47).

Daniels stated that he smokes cigarettes, smokes marijuana rarely and has a few beers at night.  (Tr. 47).  He said he used to shoot pool, play basketball and "prowl[ ] around," but he cannot do those activities now.  (Tr. 47-48).  He stated that, because of calluses on the bottoms of his feet, he can stand for only a few hours and can only walk four to five blocks.  He said that the bottoms of his feet hurt after walking that far. (Tr. 48).  He believed he could not go back to his previous work as a steward supervisor because it involved too much lifting of china, silverware, tubs and tables to set up for banquets.  (Tr. 48-49).

The ALJ questioned Daniels over an indication in the records that he had been denied treatment because of alcohol abuse, but plaintiff said he had never been turned down for treatment by a hospital or doctor.  (Tr. 49-50).  He reiterated that he had not had a problem with alcohol since he stopped working.  (Tr. 50).

C.    Vocational Expert Testimony

A vocational expert, Mary Ellen Kelly, testified at the hearing that plaintiff's past work as a kitchen steward was customarily in the medium duty category, but is classified as skilled and heavy as Daniels performed it.  (Tr. 51).  Kelly stated that Daniels had no readily transferable skills to light or sedentary work.  (Tr. 51-52).

The ALJ posed a hypothetical of an individual with the same vocational factors, age, education, past work experience and residual functional capacity for medium work as Daniels, who cannot climb ladders, ropes or scaffolds, and is limited with the right, dominant upper extremity to lifting and/or carrying up to 20 pounds.  Kelly testified that such a person would not be able to perform Daniels's past work or perform any medium level work because of the limitation on lifting with the right upper extremity.  She stated that the hypothetical individual could work at the light level as an unskilled cashier, receptionist, or information clerk, which are available jobs in the Louisiana and national economies.  (Tr. 52-53).

D.   <u>Medical Evidence</u>

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 17-19).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.   <u>Plaintiff's Appeal</u>

1.   <u>The ALJ applied the correct legal standard and substantial evidence supports the ALJ's finding that plaintiff has no severe impairments.</u>

At the second step of the sequential evaluation, the ALJ found that Daniels has medically determinable impairments of hypertension, arthropathies, hepatitis C and alcohol/drug abuse.  She held that Daniels does not have an impairment or combination

of impairments that has significantly limited or is expected to significantly limit his ability to perform basic work-related activities for 12 consecutive months. Therefore, the ALJ found that plaintiff does not have a severe impairment or combination of impairments and is not disabled. Daniels argues that the ALJ erred by finding that his chronic right elbow pain, combined with fatigue, depression and foot pain, is not severe.

"An impairment is not severe 'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" Herrera v. Comm'r of Soc. Sec., 406 F. App'x 899, 902 n.1 (5th Cir. 2010) (quoting Loza v. Apfel, 219 F.3d 378, 391 (5th Cir. 2000)); accord Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985).

"The severity of an impairment is measured in terms of its effect on the claimant's ability to work. A mere diagnosis is insufficient to establish that an impairment is severe because it does not reveal the extent to which the impairment limits the claimant's ability to work." Stone v. Astrue, No. 8:12-cv-35-T-17TBM, 2013 WL 1212889, at *6 (M.D. Fla. Feb. 26, 2013), report & recommendation adopted, 2013 WL 1212881 (M.D. Fla. Mar. 25, 2013) (citing Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005)); accord Casares v. Astrue, No. 4:11CV162, 2013 WL 960229, at *6 (S.D. Miss. Feb. 25, 2013), report & recommendation adopted, 2013 WL 960186 (S.D. Miss. Mar. 12, 2013); Morris v. Astrue, No. 4:11-CV-631-Y, 2012 WL 4468185, at *8 (N.D. Tex. Sept. 4, 2012),

13

report & recommendation adopted, 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012) (citing Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999)); Ranes v. Astrue, No. 3:08-CV-2030-D, 2009 WL 2486037, at *3 (N.D. Tex. Aug. 14, 2009) (citing Randall v. Astrue, 570 F.3d 651, 657-59 (5th Cir. 2009)).

Daniels testified that his right elbow is his main problem.  In support of his argument that this impairment is severe, he states that, during a visit to the Hope Clinic on September 12, 2011, he complained of chronic right elbow pain and complained that his pain medication was ineffective.  (Tr. 253).  On August 25, 2011, he told his health care provider at the same clinic that his right elbow pain had been worsening since 2009, bothered him more in recent months and was only partially relieved by Tylenol and ibuprofen.  (Tr. 256).

Pain may constitute a non-exertional impairment that can limit the jobs a claimant would otherwise be able to perform.  Beck v. Barnhart, 205 F. App'x 207, 212 (5th Cir. 2006); Carnahan v. Apfel, 247 F.3d 241, 2001 WL 43543, at *3 (5th Cir. 2001); Selders, 914 F.2d at 618.  However, "[t]he mere existence of pain is not an automatic ground for obtaining disability benefits."  Nugent v. Astrue, 278 F. App'x 423, 427 (5th Cir. 2008) (citing Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985)).  Pain constitutes a disabling condition "when it is constant, unremitting, and wholly unresponsive to therapeutic treatment."  Id. (quotation omitted); accord Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001).

14

Subjective complaints of pain or other symptoms must be corroborated by objective medical evidence, Quijas v. Astrue, 298 F. App'x 391, 393 (5th Cir. 2008) (citing Chambliss, 269 F.3d at 522), and such complaints may be discounted when the alleged symptoms are not consistent with the objective medical evidence.  Brown v. Astrue, 344 F. App'x 16, 21 (5th Cir. 2009); Hernandez v. Astrue, 278 F. App'x 333, 340 (5th Cir. 2008) (citing Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992)); Dunbar v. Barnhart, 330 F.3d 670, 672 (5th Cir. 2003).

It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference.  Jenkins v. Astrue, 250 F. App'x 645, 647 (5th Cir. 2007) (citing Chambliss, 269 F.3d at 522); Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991); James v. Bowen, 793 F.2d 702 (5th Cir. 1986).  Whether an applicant is able to work despite some pain is within the province of the administrative agency, and the agency's determination should be upheld if supported by substantial evidence.  Jenkins, 250 F. App'x at 647; Chambliss, 269 F.3d at 522.

The ALJ in the instant case cited the relevant severity standard and explained why he found that plaintiff's impairments were not severe.  The record substantially supports the ALJ's findings.  The medical records date back to January 2008.  They reflect no complaints of any right elbow pain before plaintiff's August 25, 2011, visit to the Hope Clinic, which was two years after his alleged onset date and three months after he filed his disability applications.  His physical examinations were all normal during doctor's

visits in the first half of 2009.  He did not seek any treatment for the next two years until June 2011, one month after he filed his applications for benefits.

The first clinical finding regarding plaintiff's right elbow was mild tenderness to palpation on August 25, 2011.  He had normal range of motion in the elbow on that date. He was diagnosed with joint pain, unspecified, and given a prescription for tramadol.[4] (Tr. 257).  On November 28, 2011, Daniels complained of pain from the right elbow to the end of his little finger.  He was given a supply of ibuprofen.  (Tr. 262).

Plaintiff had an x-ray of his right forearm on November 30, 2011, which revealed projectile fragments within the ulna,[5] narrowing of the elbow joint with mild osteoarthrosis,[6] a chronic-appearing fracture, and narrowing of the wrist joint suggestive of mild degenerative osteonecrosis.[7]  The x-ray was otherwise unremarkable.  (Tr. 290).

----

[4]Tramadol hydrochloride is a synthetic opioid analgesic that "is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time."  Physicians' Desk Reference 2519, 2520 (66th ed. 2012).

[5]The ulna is "[t]he medial and larger of the two bones of the forearm."  Stedman's Medical Dictionary, STEDMANS 424310.

[6]Osteoarthrosis is a synonym for osteoarthritis, which is "characterized by erosion of articular cartilage, either primary or secondary to trauma or other conditions, which becomes soft, frayed, and thinned with eburnation of subchondral bone and outgrowths of marginal osteophytes . . . ." Id., STEDMANS 288490.  Eburnation is "[a] change in exposed subchondral bone in degenerative joint disease in which it is converted into a dense substance with a smooth surface like ivory."  Id., STEDMANS 122970.

[7]"The death of bone in mass, as distinguished from caries ('molecular death') or relatively small foci of necrosis in bone."  Id., STEDMANS 289100.

16

On February 29, 2012, Daniels again complained of right forearm and wrist pain, and complained for the first time of left shoulder pain for some unspecified number of months, with occasional left hand cramping.  Physical examination was normal except for left shoulder pain with range of motion and resistance, and crepitus[8] in the shoulder.  Tramadol and ibuprofen were prescribed.  (Tr. 292-93).

X-rays of plaintiff's left hand on March 6, 2012 showed diffuse demineralization, moderate degenerative changes at the first joint between the bones of the palm and the wrist, with less pronounced degenerative changes elsewhere in the wrist and mild degenerative changes in several finger joints.  (Tr. 288).  X-rays of his left shoulder the same day were unremarkable.  (Tr. 289).

Donald C. Faust, M.D., a specialist in hand and orthopedic surgery, reviewed plaintiff's medical records and examined him at the request of the agency on June 26, 2012.  Daniels complained of numbness in his right forearm and pain in his left shoulder.  Physical examination was normal.  Plaintiff had full range of motion in all joints, except that he had pain with full extension of his elbow and he had less than complete pronation[9] in his right wrist.  Dr. Faust opined that Daniels "is active and independent and is able

---

[8]Crepitus or crepitation is "[t]he sensation felt on placing the hand over the seat of a fracture when the broken ends of the bone are moved, or over tissue, in which gas gangrene is present," or "[n]oise or vibration produced by rubbing bone or irregular degenerated cartilage surfaces together as in arthritis and other conditions."  Id., STEDMANS 94460.

[9]Pronation is "a specific rotational motion of the forearm that moves the palm into a downfacing position."  Id., STEDMANS 334490.

to perform activities of daily living.  He does not appear to require surgical intervention and I would not restrict [h]is activities in any way.  He is capable of gainful employment." (Tr. 279-81).  The ALJ found that Dr. Faust's opinions were consistent with the overall record and afforded great weight to those opinions. (Tr. 19).  All of this medical evidence is substantial evidence to support the ALJ's finding that plaintiff's arthropathies are not severe.

As to hepatitis C, laboratory tests at the Medical Center of Louisiana New Orleans in January 2008 confirmed that Daniels had the disease, which he reported had been diagnosed six years earlier.[10]  (Tr. 201).  The medical records reveal that he has never been treated for any symptoms related to hepatitis C.  A doctor told plaintiff on June 24, 2009, to avoid all alcohol and illegal drug use and advised him that he could not be treated for hepatitis C because of his current alcohol use.  Daniels had an abdominal ultrasound on August 29, 2011, which was negative except for atherosclerotic[11] plaquing of the abdominal aorta with mild ectasia.[12]  (Tr. 259).  The medical evidence substantially supports a finding that plaintiff's hepatitis C is not severe.

---

[10]Several references in the record to a reported history of hepatitis B appear to be erroneous.  The only diagnosis based on medical testing was for hepatitis C in January 2008.  (Tr. 201, 204).  It appears that laboratory testing ruled out hepatitis B on June 5, 2011.  (Tr. 239-41).

[11]Atherosclerosis is arteriosclerosis characterized by irregularly distributed lipid deposits in the large and medium-sized arteries, causing narrowing of arterial lumens and proceeding eventually to fibrosis and calcification.  Stedman's Medical Dictionary, STEDMANS 36300.

[12]Ectasia is "[d]ilation of a tubular structure."  Id., STEDMANS 124020.

18

Plaintiff's argument that he suffers fatigue and depression is unsupported by any evidence.  Neither condition is mentioned in either his testimony or the medical records. Nothing in plaintiff's testimony or the medical evidence indicates that he has any problems associated with the surgical removal of one testicle or his fractured right wrist, both of which occurred decades before his alleged onset date.  His testimony that he has foot pain caused by calluses, which makes it difficult to walk or stand for long, is not supported by any medical evidence.  Daniels never complained about foot pain to any health care provider.  His gait was noted to be normal at doctor's visits on August 25 and September 12, 2011, and Dr. Faust observed on June 26, 2012, that Daniels could heel-and-toe stand.  (Tr. 254, 257, 279).  Finally, the medical evidence reveals that plaintiff's high blood pressure was only slightly uncontrolled with medication, warranting no change in medication, and his cholesterol was controlled with medication.  (Tr. 245, 262, 293).  He had no complaints of medication side effects.

The evidence substantially supports a finding that plaintiff's impairments, singly or in combination, are such slight abnormalities having such minimal effect that they would not be expected to interfere with his ability to work for 12 months or more. Accordingly, this assignment of error lacks merit.

      2.      The ALJ applied the proper legal standard and substantial evidence supports the ALJ's findings regarding plaintiff's credibility.

Citing Social Security Ruling 96-7p,[13] Daniels argues that, despite the ALJ's

citation of record evidence in support of her findings that he was not credible, she did not

"identify and deal with the more numerous instances in the medical evidence that

supported [his] credibility."  Record Doc. No. 11-2 at p. 7.  Determining the credibility

of plaintiff's subjective evidence of pain and disability is a necessary part of the ALJ's

consideration of the evidence. Luckey v. Astrue, 458 F. App'x 322, 326 (5th Cir. 2011)

(citing Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985)); Perez, 415 F.3d at 462.

Regarding the effect of 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p

on an ALJ's credibility findings, the Fifth Circuit has held that the ALJ is bound to

explain her reasons for rejecting a claimant's subjective complaints, but "is not required

to 'follow formalistic rules in [her] articulation.'"  Hernandez, 278 F. App'x at 339

(quoting Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994)).  The ALJ has the

responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d

267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of

---

[13]The portion of Social Security Ruling 96-7p cited by Daniels states:

It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34,483, at 34,484, 1996 WL 362209 (July 2, 1996).

determinations that the ALJ is best positioned to make.'" Spruill v. Astrue, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164). Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court. McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007). The ALJ's explanation of her reasons for finding plaintiff not entirely credible is all that is required. James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163); Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999).

The ALJ is not required to discuss every piece of evidence, particularly when dealing with an extensive and multi-faceted record. Giles v. Astrue, 433 F. App'x 241, 251 (5th Cir. 2011) (citing Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)). "The ALJ is not required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." Clary v. Barnhart, 214 F. App'x 479, 482 (5th Cir. 2007) (citing Falco, 27 F.3d at 163). The ALJ must review the entire record, resolve conflicts in the evidence and state specific reasons for her credibility findings, supported by the evidence. Luckey, 458 F. App'x at 324; Giles, 433 F. App'x at 249; Newton, 209 F.3d at 452. The ALJ complied with these requirements in the instant case.

The ALJ examined the entire record and explained why she found that plaintiff's subjective symptoms and alleged limitations were not credible and were inconsistent with

the evidence as a whole.  As the ALJ stated, that evidence includes plaintiff's ability to work for many years after the gunshot wound to his right arm and after being diagnosed with hypertension, high cholesterol and hepatitis C.  His ability to work for a long time despite the same conditions that allegedly caused his disability is evidence that the condition is not disabling.  Bayer v. Colvin, 557 F. App'x 280, 289 (5th Cir. 2014); Willridge v. Barnhart, 54 F. App'x 592, 2002 WL 31730287, at *1 (5th Cir. 2002); Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995); Fraga v. Bowen, 810 F.2d 1296, 1305 (5th Cir. 1987).

Other factors that undermined plaintiff's credibility, which are supported by substantial evidence, include the lack of objective medical findings or even complaints by Daniels to any health care provider to support the extreme limitations he alleges; the presence of normal or minimal clinical findings at every visit to a health care provider and on diagnostic testing; and the consultative examination report of Dr. Faust, who found nothing to support plaintiff's allegations of functional limitations and who opined that Daniels has no restrictions in his abilities to perform all of the exertional requirements of work.

In these circumstances, "[t]he ALJ's evaluation of [plaintiff's] credibility was proper."  Spence v. Barnhart, 159 F. App'x 593, 596 (5th Cir. 2005) (citing Carrier v. Sullivan, 944 F.2d 243, 246-47 (5th Cir. 1991)).  Accordingly, this assignment of error lacks merit.

3.   <u>The final decision did not determine plaintiff's residual functional capacity.</u>

Although Daniels did not specifically assign it as a separate legal error, he argues in his memorandum that the ALJ erred in assessing him with a residual functional capacity for light work <u>during the hearing</u>.  He contends that, if the ALJ had recognized all of his severe impairments, she would have determined that he is capable only of sedentary work and would have incorporated those additional limitations in her hypotheticals to the vocational expert.  He asserts that Kelly's testimony then would have been different and that, based on his age, education and capacity for sedentary work only, the Medical-Vocational Guidelines would direct a finding that he is disabled.

The ALJ elicited the testimony of a vocational expert.  However, in her <u>final decision</u>, the ALJ found at step two that Daniels has no severe impairments and is not disabled.  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  <u>Perez</u>, 415 F.3d at 461.  Therefore, the ALJ did not proceed to the fourth or fifth steps of the sequential evaluation in her decision.  Because she did not proceed beyond the second step in her decision, she did not assess plaintiff's residual functional capacity.  She did not decide at the fourth step whether he could return to his past relevant work and did not determine at the fifth step whether jobs are available that Daniels could perform.  These are the steps at which the vocational expert's testimony would be relevant.

Only the Commissioner's "final decisions" are subject to judicial review. <u>Califano v. Sanders</u>, 430 U.S. 99, 107-08 (1977); <u>Riecke v. Barnhart</u>, 184 F. App'x 454, 456 (5th Cir. 2006) (citing <u>Brandyburg v. Sullivan</u>, 959 F.2d 555, 559 (5th Cir. 1992)); <u>Spence</u>, 159 F. App'x at 596 (citing 42 U.S.C. § 405(g); <u>Higginbotham v. Barnhart</u>, 405 F.3d 332, 337-38 (5th Cir. 2005)).  The court cannot review the hypothetical questions posed to the vocational expert at the hearing, when none of that testimony was incorporated into the ALJ's decision.  Because the ALJ issued no final decision regarding plaintiff's residual functional capacity or ability to work at any available jobs, there is nothing for this court to review.

## CONCLUSION

The ALJ applied the correct legal standard and substantial evidence supports her finding that Daniels has no severe impairments.  The ALJ applied the proper legal standard and substantial evidence supports her findings regarding plaintiff's credibility. Because the ALJ made no finding regarding plaintiff's residual functional capacity in her final decision, there is nothing for the court to review in that respect.

## **RECOMMENDATION**

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's appeal be denied and her complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[14]

New Orleans, Louisiana, this __21st__ day of July, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[14]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.